```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                      WESTERN DIVISION
```

KIM SUSHINSKI TERRELL, NEXT FRIEND OF
JIMMY FAY WILTSHIRE SUSHINSKI                            PLAINTIFF

VS.                         CIVIL ACTION NO. 5:15-cv-50(DCB)(MTP)

VINCENT A. DADDIO, LORI S. MILLS (DADDIO),
AND GARRISON PROPERTY AND CASUALTY
INSURANCE COMPANY, A SUBSIDIARY OF
USAA CASUALTY INSURANCE COMPANY                         DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the Court on defendant Garrison Property and Casualty Insurance Company ("Garrison")'s Motion for Summary Judgment **(docket entry 37)**, Motion to Strike **(docket entry 46)**, and Motions in Limine **(docket entries 49, 51, 53, 55, 57, 59, 61, 63, 65, 67, 69 and 71)**. Having carefully considered Garrison's motions and the responses of plaintiff Kim Sushinski Terrell, next friend of Jimmy Fay Wiltshire Sushinski, as well as the memoranda of the parties and the applicable law, and being fully advised in the premises, the Court finds as follows:

The plaintiff, Kim Sushinski Terrell, brings this action as next friend of her mother, Jimmy Fay Wiltshire Sushinski, who was 90 years old at the time the Complaint was filed. The Complaint states that Kim has filed in the Chancery Court of Pike County, Mississippi, a Petition for her appointment as Conservator of the Estate of Jimmy Fay Wiltshire Sushinski, and that she will amend the Complaint to show that she is proceeding as Conservator of her

mother's estate.[1]

The plaintiff's Complaint alleges that Jimmy Fay Wiltshire Sushinski (mother of Lori S. Mills Daddio and Kim Sushinski Terrell) was owner and occupant of a residential dwelling at 160 West Bay Street, Magnolia, Mississippi, with her husband, Steve Sushinski, who died in 2013 following an extended illness.[2] Before the death of Mr. Sushinski, Mrs. Sushinski invited her daughter Lori S. Mills Daddio, and Lori's husband Vincent A. Daddio, to move in with Mr. and Mrs. Sushinski, in order for Lori to help care for Mr. Sushinski, and because the Daddios had suffered financial misfortune. Complaint, ¶¶ 4-5.

The Complaint further alleges that some time prior to the Daddios moving into the dwelling, Mrs. Sushinski had obtained an insurance policy insuring her home for $45,000.00. Mrs. Sushinski was the only loss payee under the policy. According to the plaintiff, the Daddios "fraudulently and secretively obtained another insurance policy" from Garrison in the amount of $275,000.00. Complaint, ¶¶ 6, 8. The Complaint alleges that Garrison "wrote the excessive fire insurance coverage ($275,000.00) on the house without benefit of an appraisal of any type, in

---

[1] The plaintiff has not amended her Complaint, and there is no entry on the docket showing that Kim Sushinski Terrell is proceeding as Conservator of her mother's estate.

[2] Although the Complaint alleges that Mr. Sushinski, died in 2013, the plaintiff, Kim Sushinski Terrell, testified at her deposition that her father died in April of 2012. Terrell Deposition, p. 35.

violation of Section 83-13-5, Miss. Code Anno." Complaint, ¶ 9. The policy also increased personal property protection coverage to $222,750.00. Id., ¶ 10. The plaintiff alleges that Mrs. Sushinski had no knowledge that the Daddios had obtained the additional insurance. Id., ¶ 11.

The plaintiff further alleges that the Daddios, "or either of them acting in concert, set fire to the residence[,]" and that the Daddios "had opportunity and motive to set the fire, for their personal financial gain." Id., ¶¶ 13-14. According to the plaintiff, Garrison "made no efforts to investigate the fire or the cause of its origin, even though the recent increase in policy limits and the distressed financial circumstances of [the Daddios] should have triggered an investigation. The insurance company did not require an investigation of the cause and origin of the fire, and [the Daddios] refused an investigation of the cause and origin of the fire when requested by the Magnolia Fire Chief to do so." Id., ¶ 16.

The Complaint also alleges that the Daddios "made material misrepresentations in Proof of Loss Statements submitted by them regarding the contents, the ownership of the contents, the extent of the fire damage to the building, and their intention to rebuild the house rather than completely demolish it[;]" and that after July 15, 2013, Garrison issued checks for living expenses for the Daddios without the knowledge or consent of Mrs. Sushinski. Id.,

¶¶ 17-18.

The plaintiff further alleges that at the request of the Daddios, Garrison made Electronic Fund Transfers into Vincent Daddio's account maintained at Garrison's parent company, USAA Casualty Insurance Company ("USAA").  According to the plaintiff, "Garrison knew, or should have known, that these funds were to be paid jointly to Jimmy Fay Wiltshire Sushinski," and that Mrs. Sushinski "was not aware of the electronic fund transfers [totaling over $133,634.22], did not consent to them, and should have been notified by Garrison that such payments were being made solely to Vincent Daddio."  Id., ¶ 19.

Finally, the plaintiff alleges that checks in the amount of $290,000.00 were made payable to the Daddios and Mrs. Sushinski, and that "[e]ach of these checks were forged by the Daddio Defendants with the signature of Jimmy Fay Wiltshire Sushinski[,]" and that Garrison "knew, or should have known, about the obvious forgery of Jimmy Fay Wiltshire Sushinski's signature on the checks."  Id., ¶ 20.

The plaintiff asserts claims against Garrison for negligence and other acts and omissions for its failure "to exercise reasonable diligence and care in its acts and omissions in the issuance of the fire policy, its failure to investigate the fire loss claim, its payments [to the Daddios] and its failure to determine whether the policyholder (member), Vincent A. Daddio, had

an insurable interest in the real and personal property insured under the policy." Id., ¶ 21.

Specifically, the Complaint includes Seven Counts against Garrison: violation of Miss. Code Ann. § 83-13-5 (negligence per se)(Count I); unauthorized deposits into USAA Account No. 4799 without authorization from Mrs. Sushinski (Count II); failure to investigate materially false information provided at the time of issuance of the Fire Policy (Count III); failure to exercise reasonable diligence in investigation of fire loss (Count IV); failure to detect forgery of checks in payment of fire loss (Count V); payments to Daddios after Garrison had been expressly directed not to make payments (Count VI); negligent failure to determine that Vincent A. Daddio had no insurable interest at the time of fire loss (Count VII); and a claim for punitive damages (Count XIII).

Garrison moves for summary judgment as to all Counts. Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "Where the burden of production at trial ultimately rests on the nonmovant, 'the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case.'" Cuadra v. Houston Indep. Sch. Dist., 626 F.3d 808, 812 (5th Cir. 2010)(quoting

Shields v. Twiss, 389 F.3d 142, 149 (5th Cir. 2004)).  However, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986).  If the movant meets his burden, the nonmovant must go beyond the pleadings and point out specific facts showing the existence of a genuine issue for trial.  Cannata v. Catholic Diocese of Austin, 700 F.3d 169, 172 (5th Cir. 2012)(citation omitted).  "An issue is material if its resolution could affect the outcome of the action." Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P., 627 F.3d 134, 138 (5th Cir. 2010)(quoting Daniels v. City of Arlington, Tex., 246 F.3d 500, 502 (5th Cir. 2001)).  "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party."  Cuadra, 626 F.3d at 812 (citation omitted).

   The Court is not permitted to make credibility determinations or weigh the evidence.  Deville v. Marcantel, 567 F.3d 156, 164 (5th Cir. 2009)(citing Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 343 (5th Cir. 2007)).  When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." Sierra Club, 627 F.3d at 138.  However, "[c]onclusional allegations and denials, speculation, improbable inferences,

unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." Oliver v. Scott, 276 F.3d 736, 744 (5th Cir. 2002) (citing Sec. & Exch. Comm'n v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993)).

Garrison contends that the plaintiff's claims stem from the Sushinski family's decision to allow one family member, Lori Daddio, to handle the claim with Garrison. Lori lived in the house, and was the named insured under the policy. She was authorized to act on her mother's behalf "in all matters pertaining to the insurance" pursuant to the Policy's language, and she was her mother's agent under a written and signed Power of Attorney. Lori was the sole family member who contacted Garrison, and she and her husband Vincent worked with Garrison for a year presenting claims, providing information needed to adjust the claims, and answering Garrison's questions. During that year, Garrison paid $419,326.51 of the $427,634.04 that was ultimately paid for the losses. No other family member attempted to contact Garrison during that time.

Then, just before the final $8,307.53 payment was issued (for recoverable depreciation for certain damaged contents belonging to Lori and Vincent), Lori told the family that she had gambled away much of the claims proceeds. Following that revelation, other family members accused Lori and/or Vincent of arson, of forging

7

signatures on some of the claims checks, and of fabricating the gambling losses in order to hide money from the rest of the family.

Garrison asserts that it relied in good faith on the Power of Attorney given by Mrs. Sushinski to Lori, which provides that "no person who relies in good faith on the authority of my Agent under this instrument shall incur any liability to me, my estate or any personal representatives." (Durable Power of Attorney, Exh. 4 to Plaintiff's Motion for Summary Judgment).  Furthermore, Garrison states that it was asked to and did provide replacement cost insurance for the Sushinski house and its contents.  After the fire, it conducted a thorough investigation, adjusted the claims and made payments for the losses.  Garrison further points out that no one is claiming that it underinsured the house and its contents, nor that it underpaid the claims.

The Court addresses the seven counts against Garrison sequentially:

Count I

The plaintiff claims that Garrison committed a violation of Miss. Code Ann. § 83-13-5 by overinsuring the house without appraising the property and/or without reasonable diligence.  However, "[t]he very life of the [valued policy statute] is that the company shall not receive the premiums on one basis, and pay losses on another."  Hartford Fire Ins. Co. v. Shlenker, 32 So. 155, 157 (Miss. 1902).  The statute's purpose is to bar an "insurer

8

from arguing that the value of the insured property totally destroyed by fire is less than the amount for which the property was insured." Miss. Farm Bureau Mut. Ins. Co. v. Todd, 492 So.2d 919, 931 (Miss. 1986). Neither § 83-13-5 nor cases interpreting § 83-13-5 require an appraisal by an insurance company during the underwriting process. In this case, Garrison did not "receive the premiums on one basis, and pay losses on another" (Hartford, 32 So. at 157), and has not argued that "the value of the insured property totally destroyed by fire is less than the amount for which the property was insured." (Todd, 492 So.2d at 931). Instead, the record demonstrates that Garrison did just the opposite. Garrison took premiums and paid the dwelling claim without any argument relating to the value of the subject house.

At best, the plaintiff's claim is a thinly-veiled claim of negligent underwriting, which Mississippi law has never recognized as a viable claim. But assuming arguendo that the plaintiff can raise a claim for negligent underwriting, her claim still must fail. Garrison did what it was requested of it during its underwriting. Lori, pursuant to the Power of Attorney and with the consent of her family, asked Garrison to provide replacement cost coverage for the 3,000 square-foot, five bedroom and three bathroom house. Garrison underwrote the risk and offered dwelling limits of $297,000.00. Lori (still acting pursuant to the Power of Attorney and with her family's consent) accepted the terms. Garrison issued

the subject policy, and Lori began paying the premiums. Under these facts, there is no cause of action for negligence. There is no breach of duty where an insurer does what it was reasonably asked to do. The plaintiff also claims that Garrison placed too much insurance coverage on the house, making it a temptation for arson or theft. However, there are no alleged facts that Garrison's underwriting <u>caused</u> any loss. Garrison paid proceeds to the insured based on the amount of insurance requested and issued. Any damages suffered by the plaintiff were caused by family members or others, not by Garrison. Additionally, the plaintiff has failed to allege any facts to show that the fire was incendiary. For all of these reasons, Garrison is entitled to summary judgment on this claim.

<u>Count II</u>

According to the Complaint, Garrison damaged Mrs. Sushinski when Garrison electronically deposited claims proceeds into USAA bank account ending with #4799 without authorization or consent of and/or notice to Mrs. Sushinski, and without Mrs. Sushinski being named as a payee. Garrison contends that the evidence developed through discovery completely undermines this claim and calls for summary judgment in favor of Garrison. First, the family and Mrs. Sushinski knew about the fire and the insurance. After the fire, they consented to and had notice of Lori handling the claims with Garrison. The family consented to and had notice of Garrison

10

working with Lori and Vincent. Only Lori and Vincent presented claims to Garrison. Mrs. Sushinski never personally presented any claim to Garrison. Mrs. Sushinski never told Garrison she should be separately compensated for any part of any loss. Mrs. Sushinski decided not to personally cooperate with Garrison. She left everything to Lori and Vincent Daddio. Mrs. Sushinski chose to proceed in this manner, and cannot now claim "foul" on the part of Garrison when she consented to and had notice of the course of action. For these reasons, Garrison is entitled to summary judgment.

Additionally, the Power of Attorney was valid and enforceable at the time that each of the electronic funds transfers occurred. The Power of Attorney expressly provided that Mrs. Sushinski authorized Lori to handle the claim with Garrison. Lori had authority to "[t]ake any and all legal steps necessary to collect any amount or debt owed to [Mrs. Sushinski] or to settle any claim ... asserted on [her] behalf;" "[p]urchase and/or maintain insurance and annuity contracts;" and "[s]ell, convey, lease, mortgage, manage, insure, improve, repair, or perform any other act with respect to any of [Mrs. Sushinski's] property." The Power of Attorney also provided that Mrs. Sushinski authorized Lori to "[c]onduct any business with any banking or financial institution with respect to any of my accounts, including, but not limited to, making deposits and withdrawals, negotiating or endorsing any

11

checks or other instruments with respect to any such accounts." The Power of Attorney was valid and enforceable at the time that each of the electronic funds transfers occurred.

Furthermore, the Additional Insured Endorsement authorized Lori to act for Mrs. Sushinski "in all matters pertaining to this insurance." Accordingly, Garrison had the contractual right and duty to act in accordance with the Endorsement's language. For all of these reasons, Garrison is entitled to summary judgment on this claim.

Count III

The title of the plaintiff's Count III claims that Garrison failed to investigate materially false information provided at the time of issuance of the Policy. However, the substance of Count III is not that Garrison received materially false information at the time of the Policy's issuance; rather, the plaintiff claims that Garrison (1) failed to investigate the value of the house, and (2) failed to investigate regarding Vincent Daddio's insurable interest in the house and/or its contents.

The plaintiff's claim under Count III is for negligent underwriting which, as stated in the Court's discussion of Count I above, does not afford the plaintiff a cause of action. Additionally, regarding Vincent's insurable interest (or lack thereof), Mississippi law provides that "[t]he principle may be stated generally that anyone has an insurable interest in property

who derives a benefit from its existence or would suffer loss from its destruction...." Southeastern Fidelity Ins. Co. v. Gann, 340 So.2d 429, 434 (Miss. 1976). The record in this case demonstrates that Vincent had an insurable interest in the house and its contents. Vincent was married to Lori, an owner of the house, and lived in the house. He brought personal property, including furnishings and appliances, with him when he moved in. He also purchased new furnishings and appliances, and he and his wife made repairs to the house. Vincent also had complete access to the entire house while living there. For these reasons Garrison is entitled to summary judgment on this claim.

Count IV

The plaintiff alleges that Garrison failed to act reasonably during the investigation into the fire, and failed to determine that Lori and/or Vincent committed arson, resulting in damages to the plaintiff. To survive Garrison's summary judgment motion, the plaintiff must have some credible, competent summary judgment evidence that Lori and/or Vincent committed arson. As the Court found under Count I, the plaintiff has come forward with no such evidence, and in fact the record demonstrates that the fire was not incendiary in nature. Additionally, the plaintiff has produced no evidence to create a fact issue regarding the reasonableness of Garrison's investigation. The record demonstrates that Garrison had multiple adjusters conduct onsite investigations, and hired an

independent cause and origin specialist to investigate the fire. After Garrison determined that the fire originated at the coffee maker, Garrison had the coffee maker company and its insurer conduct their own investigations. The undisputed evidence shows that Garrison acted reasonably and that summary judgment must be granted as to this claim.

<u>Count V</u>

In Count V, the plaintiff claims that Garrison failed to detect forgery, specifically forged signatures of the name "Jimmy Fay Wiltshire Sushinski," on four checks issued by Garrison. However, there is no duty owed under Mississippi law that would require an insurer issuing claim payment checks to detect forgery of a payee listed on the checks. The checks were issued by Garrison. They were not presented to Garrison for depositing or cashing. The checks were deposited into accounts of Lori, Mrs. Sushinski, Vincent and/or some combination thereof. After Garrison mailed the checks, it did not have any further contacts with the checks until they were returned as cancelled checks.

There is also no competent evidence in the record establishing that Mrs. Sushinski or any person acting on her behalf complained of forgery prior to the final payment of $8,307.53 being issued and cashed. The checks for $9,402.83, $27,588.95, $236,528.16, and $16,113.55 were endorsed by Lori while she had authority to sign on Mrs. Sushinski's behalf pursuant to the Power of Attorney. The

final check for $8,307.53 was for recoverable depreciation, i.e., the difference in the estimated actual cash value of certain damaged items and the actual cost of items that were purchased to replace those damaged items. Lori and Vincent submitted receipts for replacement/repair of their contents to trigger this replacement/repair payment. The final check for $8,307.53 did not represent any supplemental payment for Mrs. Sushinski. For these reasons, Garrison is entitled to summary judgment.

Count VI

Count VI is a recapitulation of the plaintiff's claim that Garrison was informed of intentional acts and omissions committed by the Daddios, including submission of materially false information and arson. As the Court found in its discussion of Count V above, the plaintiff cannot establish that she was entitled to any part of the $8,307.53 check; the plaintiff's claims of arson, material misrepresentation and false claims are based solely on conjecture and speculation; and the plaintiff's complaint relating to forgery is inconsistent with the record, which establishes that the plaintiff's first complaint of forgery occurred after the final payment was issued and cashed. Inasmuch as the plaintiff can prove neither breach of duty nor damages, Garrison is entitled to summary judgment on this claim.

Count VII

In Count VII, the plaintiff alleges that Vincent Daddio had no

insurable interest in the house or its contents, no homestead rights, no beneficial interest in the contents, or any other insurable interest in the property, yet Garrison nevertheless paid Vincent for personal property coverage. The plaintiff also alleges that Garrison failed to take measures to avoid danger that its policyholder/member would intentionally destroy property to receive benefits to which he was not entitled.

As discussed above under Count III, Vincent did have an insurable interest in the house and its contents. Also, as discussed under Count IV, the plaintiff has come forward with no credible, competent summary judgment evidence that Lori and/or Vincent committed arson; and, as discussed under Count I, the record in fact demonstrates that the fire was not incendiary in nature. Garrison had multiple adjusters conduct onsite investigations, and hired an independent cause and origin specialist to investigate the fire. After it was determined that the fire originated at the coffee maker, Garrison had the coffee maker company and its insurer conduct their own investigations. The undisputed evidence shows that Garrison acted reasonably and that summary judgment must be granted as to Count VII.

Counts VIII, IX, X, XI, and XII apply only to the Daddio defendants. Count XIII (Punitive Damages) applies to all defendants, but having found that Garrison acted in good faith, the Court finds no evidence to support a punitive damage claim.

16

Summary judgment shall therefore be granted to Garrison on Count XIII.

In her response to Garrison's motion for summary judgment, the plaintiff asserts a new claim: that Garrison failed to investigate into the validity of a 1998 Deed of the family home from Mrs. Sushinski to Lori.  According to the plaintiff, while Lori was living in California in 1998, she asked her mother for a deed to her of an undivided interest in the 160 West Bay Street property, because Lori had an urgent need to pledge the house as loan collateral so that she could pay expenses associated with an ongoing divorce action.  The plaintiff alleges that Mrs. Sushinski, alone, signed the deed conveying to Mrs. Sushinski and Lori the 160 West Bay Street property.  The plaintiff further alleges that the deed was never signed by Mr. Sushinski, who had been living in the home since 1992.  The plaintiff states that Miss. Code Ann. § 89-1-29 requires that a conveyance of a homestead be signed by the spouse of the owner, if they are living together, unless the spouse has been declared insane; and that because the 1998 deed from Mrs. Sushinski to herself and Lori failed to comply with Mississippi's homestead statute, it is absolutely void.

Regardless of the status of the 1998 deed, the plaintiff's claim fails for several reasons.  First of all, the plaintiff did not assert the claim in her Complaint, and neither amended nor sought leave to amend the Complaint to add the claim; thus, it is

17

not properly before the Court.  Gomez v. LSI Integrated LP, 246 Fed.Appx. 852, 854 (5th Cir. 2007).

Moreover, it is not necessary for a party to hold legal title in order to have an insurable interest in the property.  Mrs. Sushinski and the Daddios held insurable interests regardless of who owned legal title.  "'The principle may be stated generally that anyone has an insurable interest in property who derives a benefit from its existence or would suffer from its destruction....'" Anderson v. State Farm Mut. Auto. Ins. Co., 2006 WL 2701193, *3 (S.D. Miss. Sept. 19, 2006)(quoting 29 Am. Jur. 781, Insurance, section 438, as quoted in Smith v. Eagle Star Ins. Co., 370 S.W.2d 448, 450 (Tex. 1963)(emphasis in original)).  As set forth elsewhere in this Opinion, Mrs. Sushinski and the Daddios all had insurable interests, and Lori held a Power of Attorney on behalf of her mother.  Inasmuch as this claim is not properly before the Court, and is otherwise without merit, it shall be stricken.

Garrison is therefore entitled to summary judgment on all claims against it, and the additional claim raised in the plaintiff's response to Garrison's motion for summary judgment shall be stricken.  Because all claims against Garrison are being dismissed, Garrison's motions in limine are moot.

Accordingly,

IT IS HEREBY ORDERED that defendant Garrison Property and

Casualty Insurance Company's Motion for Summary Judgment **(docket entry 37)** is GRANTED, and defendant Garrison is dismissed from this action with prejudice;

FURTHER ORDERED that defendant Garrison's Motion to Strike **(docket entry 46)** is GRANTED;

FURTHER ORDERED that defendant Garrison's Motions in Limine **(docket entries 49, 51, 53, 55, 57, 59, 61, 63, 65, 67, 69 and 71)** are MOOT.

SO ORDERED, this the 20th day of March, 2017.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE